Abrams Fensterman, LLP
3 Dakota Drive, Suite 300
Lake Success, New York 11042
*Attorneys for Plaintiff*
(516) 328-2300

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PROFESSIONAL FIGHTERS LEAGUE, LLC,

        Plaintiff,

  -against-

TAKEOVER INDUSTRIES, INC. a/k/a NXT LVL,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No. 1:24-cv-01335
(Hon. Gary Stein)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO MOTION TO DISMISS**

i

**Table of Contents**

Page

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND..........................................................................................................1

ARGUMENT...................................................................................................................................2

I.  DISMISSAL OF THE COMPLAINT IS INAPPROPRIATE............................................2

A.  NXT's Interpretation of the Indemnification Provision Would
    Lead to Absurd and Unreasonable Results ............................................................4

B.  An Ambiguity Exists as to the Intent of the Agreement.........................................6

CONCLUSION................................................................................................................................8

Plaintiff, by and through its attorneys Abrams Fensterman, LLP, respectfully submit this Memorandum of Law in opposition to Defendants' pre-Answer motion to dismiss the Second Amended Complaint. For the reasons set forth herein, as well as all prior pleadings filed in the within action, it is respectfully submitted that Defendants' motion should be denied in its entirety.

## PRELIMINARY STATEMENT

Defendant Takeover Industries, Inc. a/k/a NXT LVL breached the agreement it had with Plaintiff Professional Fighters League, LLC, wherein Defendant contracted to pay Plaintiff for the provision of promotional and sponsorship benefits on various platforms operated by Plaintiff. There is no dispute that Plaintiff rendered services, and that Defendant failed to pay for same. The dispute however, lies within an ambiguous indemnification provision that Defendant claims limits its liability to that which it has already paid Plaintiff.

It is respectfully submitted however, that this interpretation would lead to an absurd and unreasonable result, that would render other provisions therein superfluous, and would effectively permit Defendant to receive services from Plaintiff gratis. The absurdity of Defendant's interpretation is gleaned not only from common sense, but also when it is read in the context of the entirety of the Agreement, not when viewed solely through the prism of the provision at issue as Defendants intend.

## FACTUAL BACKGROUND

Plaintiff Professional Fighters League, LLC ("PFL") is a professional mixed martial arts sports league. The PFL coordinates and administers mixed martial arts events that culminate in a championship for a fighter in each respective weight class for both men and women. A significant source of its revenue is advertising.

Defendant Takeover Industries, Inc. a/k/a NXT LVL ("NXT") is an entity that, *inter alia*, manufactured and sold hydrogen water and energy drinks. In or about 2021, NXT was a rising entity within the sports drink industry.

As such, on or about December 16, 2021, NXT and the PFL executed a Sponsorship Agreement in which, *inter alia*, NXT contracted to pay the PFL for the provision of promotional and sponsorship benefits on various PFL platforms. *See* ECF Dkt. No. 16. Pursuant to the Agreement, the term of the relationship was to commence January 1, 2022, continuing in effect through December 31, 2024, with an option for NXT to extend for an additional year. *Id*.

In consideration for the sponsorships, NXT was to pay PFL varying payments in installments at the beginning of each quarter of the year for an aggregate amount of $2,152,000.00. NXT made its first installment payment on January 1, 2022, in the amount of $108,500.00, and thereafter made only a partial payment towards its second installment payment in the amount of $100,000.00 out of the required $136,500.00. *See* ECF Dkt. No. 8. Subsequently, NXT failed to make payment on any of the installments due and owed to PFL pursuant to the Agreement. *Id*.

The PFL performed its obligations in full under the Agreement, but has not received the requisite compensation under the Agreement, notwithstanding due demand from PFL to NXT. *Id.*

## ARGUMENT

### I.   DISMISSAL OF THE COMPLAINT IS INAPPROPRIATE

It is well settled that in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. However, this "flexible 'plausibility standard'" is not a heightened pleading standard, (*see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007)), and "a complaint ... does not need detailed factual allegations" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citations omitted).

Accordingly, it is respectfully submitted that when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable ...."). "For purposes of this rule, the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks and citations omitted).

Applying these standards, it is clear that dismissal of the Complaint is not warranted because issues of fact exist as to NXT's interpretation of the ambiguous indemnification provision at issue that would lead to unreasonable and absurd results.

A. **NXT's Interpretation of the Indemnification Provision Would Lead to Absurd and Unreasonable Results**

NXT does not dispute that it has breached the Agreement. Instead, NXT has taken the unreasonable position that notwithstanding its breach, the PFL's damages are limited to that which has already been paid by NXT, pursuant to the alleged "unambiguous" language of the Agreement. NXT points to the indemnification provision in the Agreement (*see* ECF Dkt. No. 16 at paragraph 13(c) therein) which states the following:

> "Each party's maximum aggregate liability under or in relation to this Agreement, including for any breach of contract, tort, or otherwise as well as any liability for any negligent act or omission however arising in respect to any one or more occurrences or incidents during the term shall be limited to the amount of the fee actually paid by sponsor to PFL for the year of the term during which the claim arose."

From this language, NXT posits that the PFL, notwithstanding its full performance under the Agreement, is not permitted to recover damages for the services it indisputably provided. This argument (which concedes liability) contorts the language and intent of the Agreement, and would lead to an unreasonable and absurd result that would effectively render other provisions in the Agreement superfluous and irrelevant.

It is axiomatic that "a contract should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties." *Atlas Partners, LLC v STMicroelectronics, Intern. N.V.*, 2015 WL 4940126 (S.D.N.Y. Aug. 10, 2015); *World Trade Ctr. Properties, L.L.C. v. Hartford Fire Ins. Co.,* 345 F.3d 154, 183–84 (2nd Cir. 2003); *Lanmark Group, Inc. v New York City School Const. Auth.*, 148 A.D.3d 603, 604 (1st Dept

2017). Furthermore, it is a general rule of contract interpretation that "a contract should not be interpreted so as to render a clause superfluous or meaningless." *Dan Dong Dong Jin Garment Co. Ltd. v KIK Fashions Inc.*, 2012 WL 2433530, (S.D.N.Y. June 27, 2012); *Garza v. Marine Transport Lines, Inc.,* 861 F.2d 23, 27 (2nd Cir. 1988); *Burlington Ins. Co. v NYC Tr. Auth.*, 29 N.Y.3d 313 (2017). In that regard, the law is established that an interpretation that "gives a reasonable and effective meaning to all terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect." *Galli v Metz*, 973 F.2d 145, 149 (2d Cir 1992).

Here, accepting NXT's interpretation of the indemnification provision of the Agreement would lead to an absurd and unreasonable result, that would render other provisions therein superfluous. In the first instance, NXT's interpretation means that it is the sole arbiter of the amount it is required to pay under the Agreement, notwithstanding the installment provision therein. In other words, the parties took the time to negotiate and memorialize an installment plan wherein the PFL would provide advertising for NXT, and NXT would pay for such service pursuant to a monthly installment plan. If NXT's interpretation is to be taken literally, this would render that installment provision meaningless. NXT could have decided to pay any amount it wanted, regardless of the contractual provision dictating the date and amount of the installment, accept the services provided by the PFL, and refuse to remedy its default by relying on the purported limitation of liability provision.

The absurdity therein is self-evident, but it is also evidenced by the manner in which the events that gave rise to this lawsuit have played out. In that regard, there is no dispute that the PFL provided advertising services for which NXT received the benefit of same, but did not pay for them. The installment plan evidenced the value that the parties assigned to the services. It is

unreasonable to interpret the contract in a manner wherein the parties agree as to the value of the services, and then limit that which can be recovered when NXT failed to pay.

Furthermore, the parties negotiated and memorialized a separate provision for late fees for the contingency in which NXT failed to pay its installments in a timely manner – which is what indisputably happened. *See* ECF Dkt. No. 16 at paragraph 1 of the "Terms and Conditions." If NXT's interpretation of this Agreement were to be accepted, then this provision too, would be rendered superfluous or meaningless. Indeed, there can be no application of a late fee, where the damages for a breach of contract are limited to that which has already been paid. Again, the absurdity of NXT's interpretation is overtly apparent from the face of this example, as with the aforementioned example.

Accordingly, NXT's interpretation of the indemnification provision would lead to an absurd and unreasonable result, and as such the Complaint should not be dismissed based upon same.

**B. An Ambiguity Exists as to the Intent of the Agreement**

NXT argues that the language of the indemnification provision at issue is unambiguous and therefore, it is a question of law for the Court to decide without the aid of extrinsic evidence, but rather based upon the "provisions of the contract delineating the rights of the parties…" *Ark Bryant Park Corp. v. Bryant Park Restoration Corp.*, 285 A.D.2d 143, 150 (1st Dept 2001).

NXT's characterization of the language at issue as unambiguous is self-serving, and contraindicative of the progeny of law regarding contract interpretation insofar as the determination of the ambiguity of language in an agreement is a question of law for a court to determine as a threshold matter. *World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co.*, 345 F.3d 154, 184 (2d Cir. 2003); *Sutton v E. Riv. Sav. Bank*, 55 N.Y.2d 550 (1982).

The holding of *CBRE, Inc. v Pace Gallery of New York, Inc.*, 2021 WL 1198644 (SDNY Mar. 30, 2021), applying New York law, is instructive as to the question of interpreting ambiguities in a contract. In *CBRE, Inc.*, the Southern District of New York held that "an ambiguity exists where a contract term could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Id.* (citations and internal quotes omitted). The Court further held in *CBRE, Inc.*, that "[a] contract is unambiguous if the language it uses has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *See also Williams v. Town of Carmel*, 175 A.D.3d 550 (2nd Dept 2019) (quoting *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562 (2002)).

As illustrated previously herein, given the context of the entirety of the Agreement (and the contradictory provisions therein), and the generally accepted principal in business that one typically expects to be paid for services rendered, a "reasonably intelligent person" may have a reasonable basis for a difference of opinion as to NXT's interpretation of the indemnification provision. In other words, if the indemnification provision unambiguously limits liability to that which has already been paid, then why would the parties include other seemingly contradictory language that would grant PFL the right to additional remedies, such as late fees? The answer, of course, is that they would not, but at the very least this would give rise to a reasonable basis for a difference of opinion as to the intent of the indemnification provision.[1]

---

[1] Given the context of the ancillary provisions that are at odds with NXT's interpretation of the indemnity provisions, an alternative and reasonable interpretation is that the parties anticipated that the fees would be paid, but that but that if other claims should arise out of the performance of the agreement then the damages would be limited to the amounts that were to have been paid.

## CONCLUSION

For all of the foregoing reasons, it is respectfully submitted that Defendants' pre-Answer motion to dismiss should be denied herein, and Plaintiff granted such other and further relief as the Court may deem just, proper and equitable.

Dated:  September 16, 2024

ABRAMS FENSTERMAN, LLP

By: *Alex Leibson*
Alex Leibson
3 Dakota Drive, Suite 300
Brooklyn, New York 11042
(718) 215-5300

*Attorneys for Plaintiffs*

8